**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLARD DUNN, | CASE NO. CV-F-04-5271 AWI WMW HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS |
| vs. | RE PETITION FOR WRIT OF HABEAS CORPUS |
| MICHAEL KNOWLES, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with counsel in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

**PROCEDURAL HISTORY**

On June 22, 2000, following a jury trial, Petitioner was convicted in Tulare County Superior Court of twenty-one sex-related felony counts.  The court sentenced Petitioner to serve a term of thirty-three years and four months in prison.

Petitioner filed a direct appeal and the California Court of Appeal, Fifth Appellate District (Court of Appeal),  affirmed his conviction and sentence on December 9, 2002, in an unpublished opinion in case number F037048.  Petitioner filed a petition for review with the California Supreme Court, which the court denied on February 19, 2003.

//

1

1                                              **STANDARD OF REVIEW**

2       JURISDICTION

3            Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

4       the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the

5       United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504

6       fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

7       Constitution. In addition, the conviction challenged arises out of the Tulare County Superior Court,

8       which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the

9       court has jurisdiction over the action.

10           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

11      ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v.

12      Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);

13      Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769

14      (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh

15      v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after

16      statute's enactment). The instant petition was filed on February 11, 2004, after the enactment of the

17      AEDPA, thus it is governed by its provisions.

18      STANDARD OF REVIEW

19           This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

20      pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

21      Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

22           The AEDPA altered the standard of review that a federal habeas court must apply with respect

23      to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct.

24      1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless

25      the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

26      application of, clearly established Federal law, as determined by the Supreme Court of the United

27      States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light

28      of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123

                                                           2

1   S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d

2   1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may

3   not issue the writ simply because that court concludes in its independent judgment that the relevant

4   state-court decision applied clearly established federal law erroneously or incorrectly."  Lockyer, at

5   1174 (citations omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations

6   omitted).

7          While habeas corpus relief is an important instrument to assure that individuals are

8   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983);

9   Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction

10  is the primary method for a petitioner to challenge that conviction.  Brecht v. Abrahamson, 507 U.S.

11  619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be

12  presumed correct, and the federal court must accept all factual findings made by the state court unless

13  the petitioner can rebut "the presumption of correctness by clear and convincing evidence."  28 U.S.C.

14  § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S.

15  99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

16         A petitioner who is in state custody and wishes to collaterally challenge his conviction by a

17  petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

18  exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity

19  to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731, 111

20  S.Ct. 2546, 2554-55 (1991);  Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo

21  v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

22         A petitioner can satisfy the exhaustion requirement by providing the highest state court with a

23  full and fair opportunity to consider each claim before presenting it to the federal court.  Picard v.

24  Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir.

25  1996). A federal court will find that the highest state court was given a full and fair opportunity to hear

26  a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.

27  Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes,

28  504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

1    When the California Supreme Court's opinion is summary in nature, however, this court "looks

2  through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last

3  state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3,

4  111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption

5  that higher court agrees with lower court's reasoning where former affirms latter without discussion);

6  see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last

7  reasoned state court opinion in determining whether state court's rejection of petitioner's claims was

8  contrary to or an unreasonable application of federal law under § 2254(d)(1)).   In the present case,

9  Respondent admits that Petitioner has exhausted his two stated grounds for relief.

**DISCUSSION**

12  USE OF EXPUNGED FELONY PRIORS

13    Petitioner contends that the use of expunged felony priors for impeaching him violated his

14  Constitutional rights to due process and to compulsory process, and his privilege against compulsory

15  incrimination.  He claims that the prejudicial effect of the impeachment with the expunged priors

16  infected his entire trial with errors of constitutional dimension.  Respondent disputes this contention.

17    The Court of Appeal described the factual background as follows:

> Appellant suffered two prior related felony convictions that the prosecutor wanted to use for impeachment purposes. The first conviction arose out of an incident in Contra Costa County in 1979.  The second conviction was for sexual battery that occurred in 1984 in Alameda County.  The victim in the Alameda County case was Brenda.
> Both of the prior convictions were ultimately expunged pursuant to section 1203.4.  As part of the plea agreement, the conviction in the Contra Costa County case was reduced to a misdemeanor pursuant to section 17, subdivision (b) before it was expunged.  The Alameda County prior was not reduced to a misdemeanor before being expunged, although appellant asserted there had been a "contract" at the time of the felony plea that the charge would later be reduced to a misdemeanor.
> Appellant's counsel argued that the prosecution was precluded from using these convictions since they had been reduced to misdemeanors before being expunged.  The trial court held that a felony conviction was a basis to impeach appellant despite the fact it was expunged.  However, the court also noted that a felony conviction reduced to a misdemeanor prior to dismissal could not be used to impeach appellant.  As a result, the court allowed the prosecution to impeach appellant with the Alameda County conviction, but not the prior from Contra Costa County.  The court also held appellant's plea in the Alameda County case constituted an admission and was admissible on that basis as well.  Appellant was subsequently questioned at trial about the prior Alameda County conviction.

4

1  Unpublished opinion in case number F037048, 14 -15.   In addressing the merits of Petitioner's

2  contention, the Court of Appeal held as follows:

3           We reject appellant's claim that he has a *right* to give testimony immune from such
           challenge.  The procedure of impeaching by proof of prior felony conviction originated at
4          common law and has long been authorized by our Legislature.   It is settled that such
           impeachment does not violate the due process  and equal protection clauses of either the federal
5          or the state Constitution (*People v. Roberts* (1966) 65 Cal.2d 514, 522; *People v. House* (1970)
           12 Cal.App.3d 756, 764; *People v. Harris* (1971) 20 Cal.App.3d 534, 538; *People v. Stewart*
6          (1966) 240 Cal.App.2d 1, 7), the federal or California privilege against self-incrimination
           (*McGautha v. California* (1971) 402 U.S. 183, 215; *People v. Collins* (1986) 42 Cal.3d 378,
7          388), nor the requirements of the Sixth Amendment (*People v. House, supra*, at p. 764.)

8  Unpublished opinion in case number F037048, 15.

9          In the present petition, Petitioner has failed to carry his burden of demonstrating that the

10  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

11  application of, clearly established Federal law, as determined by the Supreme Court of the United

12  States." 28 U.S.C. § 2254(d).  Specifically, Petitioner provides no citation to clearly established Federal

13  law holding that the use of expunged felony convictions cannot be used for impeachment purposes.

14  Accordingly, the court must find that this contention presents no basis for habeas corpus relief.

15  JUROR MISCONDUCT

16          Petitioner contends that juror misconduct in the form of introduction of extrinsic evidence into

17  the deliberation process violated his rights under the Sixth and Fourteenth Amendments, necessitating

18  a new trial.   Petitioner argues that the alleged juror misconduct was evidenced by an affidavit from

19  Juror No. 4, which read in part as follows:

20          During deliberations about one count involving the Porterville Fairgrounds parking lot, one of
           the female jurors (35) told the other jurors that she knew the parking lot well, described it and
21         it was nothing like the defense was portraying it.  A second juror (#11) concurred with her
           opinions.
22

23          "In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial

24  . . . by an impartial jury," U.S. Const., Amends. 6 and 14; see Duncan v. Louisiana, 391 U.S. 145 (1968).

25  In reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the

26  defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396

27  (9th Cir.), *cert. denied*, 419 U.S. 835 (1974).  Although it is generally preferred that a trial court hold

28

1   an evidentiary hearing when allegations of juror misconduct arise, it is not always required, particularly

2   when the court knows the exact scope and nature of the misconduct.  See United States v. Halbert, 712

3   F.2d 388, 389 (9th Cir.1983); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977); see also

4   United States v. McVeigh, 153 F.3d 1166, 1187 (10th Cir.1998), *cert. denied*, 119 S.Ct. 1148 (1999).

5   The Court is mindful of the fact that "it is virtually impossible to shield jurors from every contact or

6   influence that might theoretically affect their vote." Rushen v. Spain, 464 U.S. 114, 118 (1983), *quoting*

7   Smith v. Phillips, 455 U.S. 209, 217 (1982).  When the alleged misconduct is intra-jury, it has been

8   widely held that the trial court is entitled to greater deference in its review, because the misconduct is

9   less serious than extra-jury influences.  See Tanner v. United States, 483 U.S. 107, 117- 21 (1987);

10  Smith v. Phillips, 455 U.S. 209 (1982); Remmer v. United States, 347 U.S. 227, 228-30 (1954); Mattox

11  v. United States, 146 U.S. 140, 149 (1892); United States v. Bertoli, 40 F.3d 1384, 1393 (3d Cir.1994)

12  ("[I]ntra-jury communications pose a less serious threat to a defendant's right to an impartial trial than

13  do extra-jury influences, and therefore district courts are entitled to even greater deference in their

14  responses to them than in responses to outside influences."). United States v. Ford, 840 F.2d 460, 465-66

15  (7th Cir.1988); Government of Virgin Islands v. Gereau, 523 F.2d 140 (3d Cir.1975), *cert. denied*, 424

16  U.S. 917 (1976); Fed.R.Evid. 606(b) (juror may only testify post-verdict on the question whether

17  extraneous influence was brought to bear on jurors).  Petitioner has the burden of showing that internal

18  juror misconduct prejudiced him. See United States v. Dutkel, 192 F.3d 893, 895 (9th Cir.1999).

19          The Court of Appeal addressed the issue, finding that the trial court did not abuse its discretion

20  in determining no prejudicial juror misconduct occurred.  It specifically found that the extraneous

21  comments made by jurors relating to the parking lot were irrelevant and immaterial to Petitioner's guilt,

22  and that any misconduct was not prejudicial to Petitioner.

23          Petitioner has presented this court with nothing showing that the state courts' adjudication of the

24  juror misconduct claim "resulted in a decision that was contrary to, or involved an unreasonable

25  application of, clearly established Federal law, as determined by the Supreme Court of the United

26  States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light

27  of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  Instead, Petitioner

28  simply disagrees with the courts' conclusions.  Accordingly, this court must find that Petitioner has

1   failed to carry his burden and that this contention provides no basis for habeas corpus relief.

2

3       Based on the foregoing, IT IS HEREBY RECOMMENDED that the petition for writ of habeas

4   corpus be DENIED and that judgment be entered for Respondent.

5

6

7       These Findings and Recommendation are submitted to the assigned United States District Court

8   Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules

9   of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days

10  after being served with a copy, any party may file written objections with the court and serve a copy on

11  all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

12  Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus

13  three days if served by mail) after service of the objections.  The court will then review the Magistrate

14  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

15  objections within the specified time may waive the right to appeal the District Court's order.  Martinez

16  v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17

18

19                                IT IS SO ORDERED.

20  **Dated:    August 16, 2006**                      **/s/  William M. Wunderlich**
    mmkd34                                    UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

7